UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NEW JERSEY,<br><br>                Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION, DEPARTMENT OF JUSTICE,<br><br>                Defendants. | **COMPLAINT FOR INJUNCTIVE RELIEF**<br><br>Case No. _____ |

**Preliminary Statement**

1. In this Freedom of Information Act ("FOIA") case, the American Civil Liberties Union of New Jersey ("ACLU of New Jersey" or "Plaintiff") challenges the government's failure to promptly release documents pertaining to the use of race and ethnicity to conduct assessments and investigations by the Federal Bureau of Investigation ("FBI") in New Jersey. Although the FBI's use of race and ethnicity to collect information about and "map" racial and ethnic demographics, "behaviors," and "life style characteristics" in local communities is the subject of widespread public attention, concern, and debate, the details have been shrouded in secrecy.

2. On July 27, 2010, Plaintiff filed a FOIA request ("Request") seeking the release of records concerning the FBI's implementation of its authority under the Domestic Intelligence Operations Guide to use race and ethnicity to map local communities.

3. The FBI has failed to fulfill its obligation to make promptly available the requested information. Although the FBI issued a first interim release in December 2010, it improperly redacted information from those documents. The FBI has also failed to provide any

information subsequent to the first interim release although more than nine months have passed since the Request was filed.

4. Plaintiff is entitled to the records it seeks. These records will significantly contribute to public understanding of the FBI's potential "mapping" of local communities and businesses based on race and ethnicity and targeting of ethnic communities for special information collection, which raise grave civil rights and civil liberties concerns. Plaintiff is also entitled to a waiver of processing fees because the release of the requested records is in the public interest, and to a limitation of process fees because Plaintiff is a "news media" requester.

5. Plaintiff seeks an injunction requiring Defendants immediately to process Plaintiff's Request, to release records that have been unlawfully withheld, and to release information that has been unlawfully redacted from released documents. Plaintiff also seeks an order enjoining Defendants from assessing fees for the processing of the Request.

## Jurisdiction and Venue

6. This Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552(a)(4)(A)(vii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-706. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

## Parties

7. Plaintiff the American Civil Liberties Union of New Jersey is a regional affiliate of the American Civil Liberties Union, which is a national, non-profit, and non-partisan organization dedicated to protecting the civil liberties of all people and safeguarding basic constitutional rights to privacy, free expression, and due process. The ACLU of New Jersey is established under the laws of the State of New Jersey and has its headquarters in Newark, New

Jersey. With a membership of approximately 15,000, the ACLU of New Jersey is involved in public education, advocacy, and litigation to advance the ACLU's goals of liberty and justice for all.

8. Defendant Federal Bureau of Investigation is a component of the U.S. Department of Justice ("DOJ"). It is headquartered in Washington, D.C. and has field offices throughout the country, including in Newark, New Jersey.

9. Defendant DOJ is a Department of the Executive Branch of the U.S. government and an agency within the meaning of 5 U.S.C. § 552(f)(1). The DOJ is headquartered in Washington, D.C.

**Factual Allegations**

10. The public is increasingly concerned about the expansion of FBI surveillance powers and its conduct of assessments and investigations in ways that violate civil rights and civil liberties, particularly those of racial and ethnic minority communities.

11. In December 2008, the Department of Justice issued revised Attorney General Guidelines, which govern the FBI's conduct in criminal, national security, and counter-intelligence assessments and investigations. That same month, the FBI issued its "Domestic Intelligence Operations Guide" or "DIOG," an internal guide to implementing the Attorney General Guidelines. The DIOG was not made publicly available until September 2009, when the FBI released the guide in heavily-censored form. In January 2010, however, the FBI released through FOIA a less-censored version of the DIOG.

12. The DIOG contains troubling revelations about the FBI's authorized use of race and ethnicity information in conducting assessments and investigations. Under the DIOG, the FBI is permitted to "identify locations of concentrated ethnic communities in the Field Office's

3

domain"; to collect and analyze racial and ethnic community demographics, including data about "ethnic-oriented businesses and other facilities"; to collect and analyze racial and ethnic "behavior[s]," "cultural tradition[s]," and "life style characteristics" in local communities; and to map racial and ethnic demographics, "behavior[s]," "cultural tradition[s]," and "life style characteristics" in local communities. *See* Fed. Bureau of Investigation, Domestic Intelligence Operations Guide § 4.3(C)(2), *available at* http://vault.fbi.gov/FBI%20Domestic%20Investigations%20and%20Operations%20Guide%20%28DIOG%29.  The DIOG details the FBI's power to collect, use, and map racial and ethnic data in order to assist the agency's "domain awareness" and "intelligence analysis."

13.	The FBI's potential "mapping" of local communities and local businesses based on race and ethnicity, and its ability to target "ethnic communities" for special collection and mapping of information based on so-called racial and ethnic "behaviors" or "characteristics" raise grave civil rights and civil liberties concerns because they could be based on, or lead to, illegal and unconstitutional racial profiling.

14.	According to census data, more than one in three New Jersey residents could be considered "ethnic," and their "behaviors," "cultural traditions," and "life style characteristics" potentially could be mapped or otherwise analyzed by the FBI. *See 2010 Census Redistricting Data (Public Law 94-171) Summary File: Race*, U.S. Census Bureau (2010), http://factfinder2.census.gov/faces/tableservices/jsf/pages/productview.xhtml?pid=DEC_10_PL_P1&prodType=table.

15.	When the Los Angeles Police Department revealed a plan to map Muslim communities by race and religion, the public outcry was so great that the plan was abandoned immediately. *See* Richard Winton and Teresa Watanabe, *LAPD's Muslim Mapping Plan Killed*,

L.A. Times, Nov. 15, 2007, *available at* http://articles.latimes.com/print/2007/nov/15/local/me-muslim15.

16.	Although the DIOG has been in effect since December 2008, the public has little information regarding how the FBI has implemented its authority to collect, use, and map racial and ethnic data in New Jersey.

17.	The public needs such information, however, to provide accurate comments to the FBI regarding the released DIOG, its implementation with respect to various racial and ethnic communities, and concerns regarding the adverse impact of such activities on civil rights and civil liberties.  The FBI's General Counsel, Valerie Caproni, wrote in a December 15, 2008 letter to Senate Select Committee on Intelligence Chairman John D. Rockefeller IV that "we understand that the expansion of techniques available . . . has raised privacy and civil liberties concerns [but] we believe that our policies and procedures will mitigate those concerns."  S. Rep. No. 111-6, at 34 (2009).  Ms. Caproni stated that the FBI would reassess the policy judgments made in the DIOG, and that the reassessment would be "informed by our experience in the coming year, as well as by comments and suggestions received from Congress and interested parties."  *Id.*  The FBI's General Counsel reaffirmed this intention in an interview posted on the FBI website by stating, "[t]o the extent that the public has comments and concerns, they should let us know because nothing is written in stone and we hope we've gotten it right but if we haven't gotten it right, our goal is to make it right."  *Inside the FBI*:  *The New Attorney General Guidelines* (Jan. 16, 2009), http://www.fbi.gov/news/podcasts/inside/the-new-attorney-general-guidelines.mp3/view; *see also Investigative Guidelines Cement FBI Role as Domestic Intelligence Agency, Raising New Privacy Challenges*, Ctr. for Democracy & Tech. (Oct. 29, 2008), http://www.cdt.org/policy/investigative-guidelines-cement-fbi-role-domestic-intelligence-

agency-raising-new-privacy-cha; Press Release, Am. Civil Liberties Union, ACLU Condemns New FBI Guidelines (Oct. 3, 2008), *available at* http://www.aclu.org/national-security/aclu-condemns-new-fbi-guidelines; *Fact Sheet—New Attorney General Guidelines*, Am. Civil Liberties Union (Oct. 8, 2008), http://www.aclu.org/print/national-security/fact-sheet-new-attorney-general-guidelines.

18. Public concern about, and media interest in, the FBI's racial and ethnic mapping program has intensified in recent months in New Jersey and other parts of the country, but publicly available facts remain sparse. *See FBI Defends Guidelines Before Senate Testimony*, CBS News, July 27, 2010, *available at* http://www.cbsnews.com/stories/2010/07/27/national/main6719531.shtml ("While some racial and ethnic data collection by some agencies might be helpful in lessening discrimination, the FBI's attempt to collect and map demographic data using race-based criteria invites unconstitutional racial profiling by law enforcement . . . ."); Joe Tyrrell, *Legal Group, ACLU Accuse FBI of Targeting Muslims*, N.J. Newsroom, July 28, 2010, *available at* http://www.newjerseynewsroom.com/nation/legal-group-aclu-accuse-fbi-of-targeting-muslims; *see also* Steve Carmody, *ACLU Wants Info on FBI Racial 'Mapping' Program*, Mich. Radio, July 28, 2010, *available at* http://www.publicbroadcasting.net/michigan/news.newsmain/article/0/1/1681187/Michigan.News/ACLU.Wants.Info.On.FBI.Racial.%27Mapping%27.Program.; Carol Cratty, *ACLU Seeking FBI Records on Race and Ethnicity Data*, CNN, July 27, 2010, *available at* http://articles.cnn.com/2010-07-27/us/aclu.fbi_1_ethnic-groups-fbi-offices-ethnic-populations?_s=PM:US; Brent Jones, *ACLU Seeks Information About FBI Racial, Ethnic Data Collection*, Baltimore Sun, July 28, 2010, *available at* http://articles.baltimoresun.com/2010-07-

6

28/news/bs-md-aclu-fbi-20100728_1_ethnic-data-profiling-aclu-representatives; Richard Locker, *Tennessee ACLU Asks FBI About Race Data in Localities*, The Commercial Appeal, July 30, 2010, *available at* http://www.commercialappeal.com/news/2010/jul/30/tennessee-aclu-asks-fbi-about-race-data-in/; Tim McGlone, *ACLU Requests Racial Data From FBI in Norfolk, Richmond*, Virginian-Pilot, July 28, 2010, *available at* http://hamptonroads.com/2010/07/aclu-requests-racial-data-fbi-norfolk-richmond; Jonathan Saltzman, *ACLU Affiliates Want FBI to Disclose Data*, Boston Globe, July 27, 2010, *available at* http://articles.boston.com/2010-07-27/news/29327598_1_ethnic-groups-affiliates-fbi; Gene Warner, *Data Mining on Minorities by FBI Raises Profiling Issue*, Buffalo News, July 28, 2010, *available at* http://www.buffalonews.com/city/article82973.ece; Patrick Williams, *ACLU Wants to Know How the FBI Profiles Ethnic Communities*, Dallas Observer, Aug. 5, 2010, *available at* http://www.dallasobserver.com/2010-08-05/news/aclu-wants-to-know-how-the-fbi-profiles-ethnic-communities/; Karen Lee Ziner, *R.I. ACLU Seeks FBI Records Regarding Ethnic Profiles of Neighborhoods*, Providence J., July 29, 2010, *available at* http://www.projo.com/news/content/ACLU_FBI_07-29-10_FFJBB2M_v15.3cf5baf.html.

19. In short, there is significant and increasing public concern that the FBI is collecting, using, and mapping racial and ethnic data about local communities as revealed in the DIOG in ways that violate civil rights and civil liberties, but there is a dearth of publicly available facts.

**The FOIA Request**

20. On July 27, 2010, the ACLU of New Jersey submitted a request pursuant to the FOIA, 5 U.S.C. § 552, and the DOJ implementing regulations, 28 C.F.R. § 16.1, to Defendant FBI requesting records pertaining to the FBI's use of race and ethnicity to conduct assessments

7

and investigations in local communities in New Jersey.  Identical copies of the Request were sent to the following six FBI offices in New Jersey: Hamilton, Newark, Northfield, Redbank, Somerset, and Woodland Park.

21.     The Request seeks legal memoranda, procedures, policies, directives, practices, guidance, and guidelines concerning the following types of information that the FBI may collect, map or otherwise use in the course of assessments and investigations pursuant to the authorities described in the DIOG: a) racial and ethnic information; b) "ethnic-oriented" businesses or other "ethnic-oriented" facilities; c) "[f]ocused behavioral characteristics reasonably believed to be associated with a particular criminal or terrorist element of an ethnic community"; and d) "behavioral and cultural information about ethnic or racial communities that is reasonably likely to be exploited by criminal or terrorist groups who hide within those communities."  It also seeks records concerning the information that the FBI Field Office in New Jersey has collected or mapped pursuant to the authorities described in the DIOG.  The Request additionally seeks information about the communities in New Jersey about which the FBI Field Office has collected or mapped racial or ethnic information, and the maps it has created based on the data collected. Finally, the Request seeks documents pertaining to how the FBI is authorized to use the racial and ethnic data it collects pursuant to the authorities described in the DIOG.

Request for a Public Interest Fee Waiver

22.     Plaintiff sought a waiver of fees on the ground that disclosure of the requested records is in the public interest because "it is likely to contribute significantly to public understanding of the operations or activities of government and is not primarily in the commercial interest of the requester."  *See* 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 28 C.F.R. § 16.11 (k)(1).

23. Disclosure of the requested records will contribute significantly to the public's understanding of the FBI's collection and mapping of racial and ethnic data in local communities.

24. Disclosure is not in the ACLU of New Jersey's commercial interest. The ACLU of New Jersey summarizes, analyzes, explains and disseminates the information it gathers through the FOIA at no cost to the public.

<u>Request for a Limitation of Fees Based on News Media Requester Status</u>

25. Plaintiff sought a limitation of fees on the ground that the ACLU of New Jersey qualifies as a "news media" requester. *See* 5 U.S.C. § 552(a)(4)(A)(ii); *see also* 28 C.F.R. § 16.11(d).

26. The ACLU of New Jersey is a "news media" requester for the purposes of the FOIA because it is an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience. The ACLU of New Jersey publishes electronic and paper newsletters, reports, books, "know your rights" publications, fact sheets, brochures, pamphlets, and other educational and informational materials. The ACLU of New Jersey also maintains an extensive website and a well trafficked Facebook page. Through these and other channels, the ACLU of New Jersey routinely summarizes, explains, and disseminates information obtained through the FOIA. The ACLU of New Jersey provides all of this information at no cost to the public.

**Agency Response**

27.     Defendants are improperly withholding the records sought by Plaintiff's Request.

28.     By letter dated August 6, 2010, the FBI acknowledged receipt of Plaintiff's Requests sent to the FBI's Newark Field Office and Somerset Resident Agency, and assigned tracking number 1151935-000 to the requests.  The FBI also stated that it was searching its Central Records System for the information Plaintiff requested and that the FBI would inform Plaintiff of the results "as soon as possible."

29.     By letter dated August 19, 2010, the FBI acknowledged receipt of the Requests sent to the Hamilton, Northfield and Red Bank Resident Agencies of the FBI.

30.     By letter dated August 31, 2010, the FBI legal office in Woodland Park indicated that it had received the Request and was forwarding it to the Newark Field Office "for their attention."

31.     Nearly three months after the first letter indicating receipt of the Request, by letter dated November 4, 2010, the FBI indicated that it was still searching for documents and that once the search process was completed, the documents would be forwarded to the "perfected backlog" to await assignment to an analyst.  As of November 3, 2010, the FBI already had exceeded the generally applicable twenty-day statutory deadline for processing standard, non-expedited FOIA requests.  *See* 5 U.S.C. § 552(a)(6)(A)(i).

32.     Finally, more than four months later, by letter dated December 22, 2010, David Hardy, Section Chief of the Record/Information Dissemination Section of the Records Management Division of the FBI, issued Plaintiff a "first interim release" consisting of 298 pages in response to the Request.  Mr. Hardy stated that certain information was withheld from the documents pursuant to FOIA exemptions set forth in 5 U.S.C. § 552(b)(2), (6), (7)(C) and

(7)(E).  Mr. Hardy also stated that Plaintiff's request for a fee waiver "remains under consideration," and will be decided "once all responsive material has been received and reviewed."

33. As of the date of this filing, the FBI has not produced any additional documents or informed Plaintiff of an anticipated date for the completion of the processing of the Request.

**Exhaustion**

34. Plaintiff has exhausted all applicable administrative remedies with respect to the Request.

35. By letter dated February 16, 2011, Plaintiff timely appealed the FBI's withholding of information from the documents in the first interim release; its failure to timely respond to the FOIA Request, to make the requested information promptly available, and to refrain from improperly withholding documents; and its failure to decide and/or grant Plaintiff's requests for a fee waiver and for a limitation of processing fees.

**Causes of Action**

36. Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents under 5 U.S.C. § 552(a)(4)(B) because the FBI continues to improperly withhold and/or delay the processing of agency records in violation of the FOIA.  Plaintiff will also suffer irreparable injury from, and have no adequate legal remedy for, the FBI's illegal withholding of and prolonged delay in production of government documents pertaining to the racial and ethnic mapping of individuals and communities in New Jersey.

37. Defendants' failure to release records responsive to Plaintiff's request violates the FOIA, 5 U.S.C. § 552(a), and the corresponding agency regulations, 28 C.F.R. § 16.1.

38.     Defendants' failure to timely respond to Plaintiff's request violates the FOIA, 5 U.S.C. § 552(a)(6)(A), and the corresponding agency regulations, 28 C.F.R. § 16.6(b).

39.     Defendants' failure to make promptly available the records sought by Plaintiff's request violates the FOIA, 5 U.S.C. § 552(a)(3)(A), and the corresponding agency regulations, 28 C.F.R. § 16.6(b).

40.     Defendants' improper withholding of information, including information redacted from the first interim release, violates the FOIA, 5 U.S.C. § 552(a)(4)(B).

41.     Defendants' failure to grant Plaintiff's request for a public interest fee waiver violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and the corresponding agency regulations, 28 C.F.R. § 16.11(k)(1).

42.     Defendants' failure to grant Plaintiff's request for a limitation of fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(ii), and the corresponding agency regulations, 28 C.F.R. § 16.11(d).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.      Order Defendants to conduct a thorough search for all responsive records;

B.      Order Defendants to immediately process all requested records;

C.      Order Defendants to promptly disclose the requested records in their entirety and to make copies available to Plaintiff;

D.      Enjoin Defendants from charging Plaintiff fees for processing the Request;

E.      Enter a preliminary and permanent injunction against the Defendants ordering the relief requested herein;

F.	Award Plaintiff its litigation costs and reasonable attorneys' fees incurred in this action; and

G.	Grant such other relief as the Court may deem just and proper.

Respectfully Submitted,

 s/ Jeanne LoCicero
EDWARD BAROCAS
JEANNE LOCICERO
ALEXANDER SHALOM
American Civil Liberties Union
  of New Jersey Foundation
89 Market Street, 7th Floor
P.O. Box 32159
Newark, NJ 07102
Phone: 973-854-1717
Email: ebarocas@aclu-nj.org,
jlocicero@aclu-nj.org, ashalom@aclu-nj.org

NUSRAT CHOUDHURY
(*To be admitted pro hac vice*)
HINA SHAMSI
(*To be admitted pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: 212-519-7876
Email: nchoudhury@aclu.org,
hshamsi@aclu.org

May 4, 2011