# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

AMERICAN CIVIL LIBERTIES )
UNION OF NEW JERSEY, )
                  ) Judge Esther Salas
     Plaintiff, )
                  ) Magistrate Judge Cathy L.
         v. ) Waldor
                  )
FEDERAL BUREAU OF ) Civil No. 11-cv-02553
INVESTIGATION, UNITED STATES )
DEPARTMENT OF JUSTICE, )
                  ) MOTION DAY: May 7, 2012
     Defendants. )
_____)

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MARCH 16, 2012, MOTION FOR SUMMARY JUDGMENT; DEFENDANTS' OPPOSITION TO PLAINTIFF'S APRIL 2, 2012, CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT; AND DEFENDANTS' SUR-REPLY AS TO THE SECTION 552(C) EXCLUSION ISSUE**

Dated: April 13, 2012            Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

PAUL J. FISHMAN
United States Attorney

JOHN TYLER
Assistant Director
Federal Programs Branch

 /s/ Deanna L. Durrett
DEANNA L. DURRETT (NY BAR)
U.S. Dept. of Justice,
Civil Division, Federal Programs
Branch
26 Federal Plaza, Room 346
New York, NY 10278
(212) 264-9232 phone
(212) 264-1916 fax
Deanna.L.Durrett@usdoj.gov

*Attorneys for Defendants*

## TABLE OF CONTENTS

**PAGES**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.   Defendants Have Fully Justified The Withholdings in
     the EC Pursuant to Exemptions 7(A) and 7(E). . . . . . . . . 3

II.  Plaintiff's Proposed Procedures for Litigating FOIA's
     Exclusion Provisions are Untimely, Unworkable, and
     Contrary to Congressional Intent.. . . . . . . . . . . . 10

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

**CASES**                                                                **PAGES**

Afshar v. Dep't of State,
    702 F.2d 1125 (D.C. Cir. 1983).. . . . . . . . . . . . 4, 7

Am. Friends Serv. Comm. v. Dep't of Defense,
    831 F.2d 441 (3d Cir. 1987). . . . . . . . . . . . . 9

Arieff v. U.S. Dep't of Navy,
    712 F.2d 1462, 1470 (D.C. Cir. 1983).. . . . . . . . 18

Beauman v. FBI,
    No. 92-cv-7603, slip op. (C.D. Cal. April 12, 1993). . . 12

Cottone v. Reno,
    193 F.3d 550 (D.C. Cir. 1999) . . . . . . . . . . . . 4, 5

Cozen O'Connor v. U.S. Dep't of Treasury,
    570 F. Supp. 2d 749 (E.D. Pa. 2008). . . . . . . . . . 13

Fitzgibbon v. CIA,
    911 F.2d 755 (D.C. Cir. 1990). . . . . . . . . . . . . 9

Islamic Shura Council of Southern Cal. v. FBI,
    635 F.3d 1160 (9th Cir. 2011). . . . . . . . . . . . . 18

Makky v. Chertoff,
    489 F. Supp. 2d 421 (D.N.J. 2007) . . . . . . . . . . 9-10

Mayer Brown LLP v. IRS,
    562 F.3d 1190 (D.C. Cir. 2009) . . . . . . . . . . . . 8

PHE, Inc. v. Dep't of Justice,
    983 F.2d 248 (D.C. Cir. 1993) . . . . . . . . . . . . 8-9

Phillippi v. CIA,
    546 F.2d 1009 (D.C. Cir. 1976).. . . . . . . . . . . . 13

Pipko v. CIA,
    312 F. Supp. 2d 669 (D.N.J. 2004). . . . . . . . . . . 13

Quinon v. FBI,
    86 F.3d 1222 (D.C. Cir. 1996). . . . . . . . . . . . . 9

Sellers v. U.S. Dep't of Justice,
 684 F. Supp. 2d 149 (D.D.C. 2010) . . . . . . . . . . . 5

Steinberg v. Dep't of Justice,
 1997 WL 349997 (D.D.C. June 18, 1997). . . . . . . 12, 18-19

Students Against Genocide v. Dep't of State,
 257 F.3d 828 (D.C. Cir. 2001) . . . . . . . . . . . . . 4

Wilner v. Nat'l Sec. Agency,
 2008 WL 2567765 (S.D.N.Y. June 25, 2008). . . . . . . . 13

Wolf v. CIA,
 473 F.3d 370 (D.C. Cir. 2007) . . . . . . . . . . . . . 13

**STATUTES**

5 U.S.C. § 552. . . . . . . . . . . . . . . . . . . . . . *passim*

**MISCELLANEOUS**

Attorney General Edwin Meese on the 1986 Amendments to
the FOIA (Dec. 1987) ("Attorney General Memo") (available at
www.justice.gov/oip/86agmemo.htm#exclusions). . . . . . . 11, 13

132 Cong. Rec. 26763 (1986). . . . . . . . . . . . . . . . 15

132 Cong. Rec. 31424 (1986). . . . . . . . . . . . . . . . 15

**INTRODUCTION**

In enacting the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Congress struck a balance between the public's interest in greater access to information and the Government's interest in protecting certain kinds of information from disclosure.  In its FOIA request and its April 2, 2012, Cross-Motion, Plaintiff has made its interest clear: it seeks information on the FBI's use of racial and ethnic demographical information in intelligence assessments and criminal investigations.  In response to Plaintiff's request, Defendants produced hundreds of pages of documents and released all segregable information subject to the FOIA, including voluntarily releasing the FBI Electronic Communication ("EC") at issue now.  Yet, because this EC, like previous documents produced by Defendants, is a sensitive law enforcement record used to guide a domestic terrorism assessment and ongoing criminal investigations, the realities of Congress' balance are present.  Some of the information in the EC must be withheld to prevent possible interference with ongoing investigations and/or potential circumvention of the FBI's investigative efforts by either the groups discussed in the EC or other criminal actors.  See Second Supplemental Declaration of Mr. David Hardy ("Second Supp. Hardy Decl.") at Dkt. # 26-2.

1

Plaintiff raises one argument in opposition.  It claims that Defendants have not adequately justified the withholding of racial and ethnic information in the EC, as this information is already publicly available.  Yet, it is *Plaintiff's* burden to demonstrate that the information it seeks has, in fact, been made public, something Plaintiff has failed to do.  And Plaintiff cannot make such a showing, for the release of any racial or ethnic information in the EC would reveal far more than basic census data and population statistics. Further releases would provide Plaintiff and the public with analytical investigatory information such as the identities of the groups under investigation, what the FBI knows or does not know about these groups, and how the FBI intends to assess the criminal activity of these groups.  Because this information is not available to the public and should not become available to the public, Plaintiff's request for it should be denied.

In addition, this Court must deny Plaintiff's newly proposed procedures for adjudication of its claim under Section 552(c) of the FOIA.  Plaintiff's proposal is not only untimely, as it is offered for the first time in its Reply Memorandum in Support of Plaintiff's Cross-Motion for Summary Judgment ("Pl. Memo"), but it would create dangerous precedent, undermining the very purpose of the exclusion provisions and compromising highly sensitive criminal law enforcement records and/or classified foreign intelligence, counterintelligence, or international terrorism

information.  As explained herein, the harms that would result
from adoption of Plaintiff's proposal far outweigh any
frustration Plaintiff may feel toward the *ex parte, in camera*
review procedures already underway in this litigation.

**ARGUMENT**

I.   **Defendants Have Fully Justified The Withholdings in the EC
     Pursuant to Exemptions 7(A) and 7(E).**

     In Defendants' Motion for Summary Judgment on the production
of the EC released by Defendants on February 22, 2012, and in Mr.
Hardy's supporting declaration, Defendants explain that certain
information, including "the identity of the groups" under
investigation, FBI "file numbers," "background and supporting
information which would identify the groups, [and] the criteria
and characteristics being evaluated concerning the groups," has
been withheld pursuant to Exemption 7(A), for its release could
lead to possible interference with pending investigations into
the groups discussed in the EC.  See Second Supp. Hardy Decl.
¶ 9.  In addition, pursuant to Exemption 7(E), Defendants
withheld "questions and criteria for evaluation of the groups,"
"designations assigned to certain types of intelligence and/or
criminal files and investigations," "Standing Requirement
descriptive information," and "intelligence information,
analysis, and conclusory work product concerning the groups," as
disclosure of these investigatory techniques and guidelines could
lead to circumvention of the law by the groups at issue or other

3

criminal actors seeking to evade law enforcement detection.  Id.
¶ 16.  Plaintiff states, however, that it does not seek this
information.  See Pl. Memo at 26 n.15, 27 (Plaintiff is not
interested in "group names and types, background information, and
related file numbers," or "the questions or criteria for
evaluation of the domestic terrorist groups or discussion of the
specific factors to be analyzed to assess the threat posed by the
groups").  Instead, Plaintiff seeks only a "narrow category of
information: racial and ethnic information that is already
publicly available from census data and other demographic
information sources."  Id. at 2.  Yet, to the extent any of this
information exists in the EC, it must remain protected from
release pursuant to either Exemption 7(A) or 7(E).[1]

        As the D.C. Circuit has explained, "[f]or the public domain
doctrine to apply, the specific information sought must have
already been 'disclosed and preserved in a permanent public
record.'"  Students Against Genocide v. Dep't of State, 257 F.3d
828, 836 (D.C. Cir. 2001) (quoting Cottone v. Reno, 193 F.3d 550,
554 (D.C. Cir. 1999)).  Plaintiff bears the burden of "pointing
to specific information in the public domain that appears to
duplicate that being withheld," Afshar v. Dep't of State, 702
F.2d 1125, 1130 (D.C. Cir. 1983), "for were it otherwise, the
government would face the daunting task of proving a negative:

_____

        [1] Plaintiff does not challenge Defendants' withholdings
pursuant to Exemptions 6 and 7(C).  See Pl. Memo at 5 n.1.

4

that requested information had not been previously disclosed." Cottone, 193 F.3d at 554.  But Plaintiff has not met its burden here.  In fact, Plaintiff has not given this Court any reason to "be confident that the information sought is *truly public* and that the requester receive *no more* than what is publicly available[.]" Id. at 555 (emphasis added).

First, Plaintiff fails to identify specific public source information it believes exists in the EC.  It has not attached any of the "information sources" it contends contain the same information as the EC to its Cross-Motion.  Pl. Memo at 2.  To the extent Plaintiff is relying on the Census Bureau information it attached to its First Cross-Motion for Summary Judgment, Plaintiff makes no reference to that information now and does not provide any explanation of why it believes that census information can be found in the EC - a document distinct from any previously released by Defendants in this case.  See Second Supp. Hardy Decl. ¶ 5.  At best, Plaintiff claims that because the DIOG "permits the FBI collect and map communities' racial and ethnical information," the EC "likely uses and relies on publicly-available information about racial and ethnic communities, including census data or demographics."  Pl. Memo at 25.  But this logical leap will not suffice.  See, e.g., Sellers v. U.S. Dep't of Justice, 684 F. Supp. 2d 149, 162 (D.D.C. 2010) ("Plaintiff's argument is not persuasive, given his failure to

5

point to any specific record, document, or information identical to what is being withheld under the claimed exemption.").[2]

Second, assuming, *arguendo*, that some of the information withheld contains the type of racial or ethnic information that Plaintiff seeks, the release of it here would reveal far more than raw population data already available to the public.  As is evident from an examination of the EC, it is an analytical document of a very different nature than the "2010 Census Redistricting Data" Report identified by Plaintiff in its prior motion, and release of any racial or ethnic information contained in the EC would also reveal, *inter alia*, the identity of the target of the investigation, what the FBI knows about its presence and activity in Newark Field Office's domain, and the FBI's approach and/or guidelines to assessing the target.  See Second Supp. Hardy Decl. ¶¶ 9, 16.  For example, on page one of the EC, the information redacted pursuant to Exemptions 7(A) and 7(E) includes part of the "Title" of the Assessment and the words following "the Newark Domain Management Team is initiating a Type

_____

[2] Defendants have explained that this EC was determined to be non-responsive to Plaintiff's request for documents concerning the FBI's implementation of its authority to collect information about and "map" racial and ethnic demographics, "behaviors," and "life style characteristics" in local communities.  See Dkt. # 26-1 (Defs. March 16, 2012, MSJ) at 2; see also Dkt. # 20-3 (Hardy Ex. A, Pl. FOIA Request).  Defendants voluntarily produced this document in light of Plaintiff's stated interest in "two-to-three page electronic communications authorizing the opening of Domain Management investigations."  Dkt. # 21-1 (Pl. Cross-Motion) at 18.

4 Assessment on [redacted]."  Second Supp. Hardy Decl. Ex. A at
1.  Page two contains explanation of the assessment and
background information on the groups.  Id. at 2.  This
information clearly concerns the identity of the domestic
terrorist groups being assessed, information not sought by
Plaintiff.  Similarly, on page three, the EC states that the
FBI's assessment is to "identify preliminary domain awareness on
the threat from [redacted]" and that "[b]ased upon guidance from
the Domain Management Section, the NK Domain Team will consider
the following questions in this Assessment . . . [partially
redacted]."  Id. at 3.  This information also concerns the
identity of the groups as well as guidance for the investigation
or the "questions and criteria" for evaluating the threat posed
by the groups, which Plaintiff does not challenge.  Id. p. 3-5.
Thus, the document itself demonstrates that no further
segregation is possible without revealing protected information
not already available to the public.

     Third, given that the release of any racial or ethnic
information from the EC would reveal the identity of the groups
and/or what the FBI does or does not know about them or does or
does not plan to consider as part of the assessment, the logic of
the public-domain doctrine - that "enforcement of an exemption
cannot fulfill its purposes" once the information is already
publicly available - does not hold true here.  See Afshar, 702
F.2d at 1130.  As Mr. Hardy has explained, disclosure of this

7

information would serve as notice to the groups that they are the focus of ongoing, active investigations.  Second Supp. Hardy Decl. ¶ 9.  Armed with this knowledge, the groups could engage in activities or alter their behavior to avoid detection and/or further investigation.  Id.  Likewise, disclosing aspects of the FBI's approach to assessing these groups (including whether the FBI is, in fact, utilizing census data and population statistics as part of its ongoing investigation) would educate the groups on when/where to cease activities and when/where to proceed or how to circumvent certain FBI techniques and law enforcement efforts. Id. ¶ 16.

Plaintiff contends that Defendants have only offered "conclusory and speculative statements" that disclosure would result in circumvention of the law, Pl. Memo at 28, but the exactitude Plaintiff seeks is not required by courts or the FOIA. FOIA requires only that an agency "could reasonably [] expect[]" interference with an investigation or circumvention of the law. 5 U.S.C. §§ 552(b)(7)(A), (C).  In light of this "broad and general" language, courts have held that "a highly specific burden of showing how the law will be circumvented" is not required; instead, and agency need only "'demonstrate[ ] logically how the release of [the requested] information might create a risk of circumvention of the law.'"  Mayer Brown LLP v. IRS, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (quoting PHE, Inc. v.

8

Dep't of Justice, 983 F.2d 248, 251 (D.C. Cir. 1993)).  That Defendants have clearly done.

Finally, Plaintiff's citation to other documents released by other FBI field offices in an attempt to downplay any harm articulated by Mr. Hardy is unavailing.  See Pl. Memo at 26. These documents pertain to other FBI offices' domains and may or may not concern active investigations as the EC at issue here does.  See Second Supp. Hardy Decl. ¶ 9.  And the fact that Defendants released some census figures from other documents "does not eliminate the possibility that further disclosures can cause harm," Fitzgibbon v. CIA, 911 F.2d 755, 766 (D.C. Cir. 1990), especially since any racial or ethnic information in this EC is tailored to these groups and is currently being used in an investigation.  See Second Supp. Hardy Decl. ¶¶ 9, 16.  The FBI has determined that there is a real, identifiable risk of interference with an open investigation and circumvention of law enforcement efforts if the redacted information is released.  Id. It has articulated that potential risk with reasonable specificity.  Id.  Consequently, Defendants' withholdings should be upheld.  See Am. Friends Serv. Comm. v. Dep't of Defense, 831 F.2d 441, 444 (3d Cir. 1987).[3]

---

[3] For these reasons, the Court should also deny Plaintiff's request for in camera review of the EC.  In camera review "should not be resorted to as a matter of course, simply on the theory that 'it can't hurt.'"  Quinon v. FBI, 86 F.3d 1222, 1228 (D.C. Cir. 1996).  Rather, as the court in Makky v. Chertoff explained, it is a procedure available to courts when agencies have offered

## II.  Plaintiff's Proposed Procedures for Litigating FOIA's Exclusion Provisions are Untimely, Unworkable, and Contrary to Congressional Intent.

In Plaintiff's Reply Memorandum, Plaintiff proposes novel procedures for adjudication of its claim under Section 552(c) of the FOIA.  See Pl. Memo at 30.  As Defendants have explained, Congress added Sections 552(c)'s three provisions to the FOIA to create a mechanism for protecting especially sensitive law enforcement materials, including documents concerning (1) ongoing criminal investigations, (2) informant identities, and (3) classified foreign intelligence or international terrorism information.  5 U.S.C. §§ 552(c)(1)-(3).  To ensure total secrecy as to the existence of any documents in these categories, Congress provided that agencies - in the face of a request that touches upon such records - may treat these law enforcement and national security records "as not subject to the requirements" of FOIA.  Id.  In litigation, if a plaintiff-requester raises a claim regarding an agency's reliance on Section 552(c), an agency is to submit an *ex parte, in camera* declaration addressing that claim, regardless of whether the government relied on any exclusion provision.  Responding in such a manner in every case in which a 552(c) claim is raised is necessary to prevent

_____

only conclusory affidavits, when an agency's justifications for its withholdings are contradicted by the record, or when there is evidence of bad faith.  489 F. Supp. 2d 421, 441 (D.N.J. 2007). This is not the case here.

10

requesters (and the public) from being able to determine, by process of elimination, when records have actually been excluded. See Memorandum from Attorney General Edwin Meese on the 1986 Amendments to the FOIA (Dec. 1987) ("Attorney General Memo") at 29-30 (available at www.justice.gov/oip/86agmemo.htm#exclusions).

Because Plaintiff raised a 552(c) claim in its January 20, 2012, Cross-Motion for Summary Judgment, Defendants have followed these procedures in this case.  Now, near the completion of briefing of Defendants' two Motions for Summary Judgment, see Dkt. # 20, 26, and Plaintiff's two Cross-Motions for Partial Summary Judgment, see Dkt. # 21, 27, Plaintiff asks the Court to rewind the clock and adopt new procedures for adjudicating its Section 552(c) claim.  Plaintiff proposes the Court adopt "Glomar-like" procedures, asking the Court to require defendant-agencies to submit "public court filing[s]" indicating whether the agencies interpret all or part of a plaintiff's FOIA request as seeking records that, if they exist, would be excludable under Section 552(c).  Pl. Memo at 36.  The parties would then "brief the propriety of any such hypothetical invocation," id. at 38 n.21, and the Court would ultimately rule as to whether the type of information sought by the plaintiff, if it exists, is excludable, id. at 37.  Plaintiff's proposal, however, should be rejected for several reasons, including that it is untimely, unworkable, and contrary to Congressional intent, both in this case and as a general matter.

11

First, as noted, Defendants have already submitted an *in camera, ex parte* declaration to the Court, thereby allowing the Court to determine whether any exclusion, if in fact utilized, was proper. Plaintiff's proposal would have the Court back track, ignore Defendants' submission, and invite the parties to engage in a whole new round of briefing, wherein the parties would litigate *words of the FOIA request* and hypothetical situations in which those words may call for excludable records. But the Court need not adjudicate hypotheticals, as it already has the precise information it needs before it. As other courts have done when presented with 552(c) *in camera* submissions, the Court can determine the correctness of any reliance on the exclusion provisions, and then state on the public record that "if an exclusion was in fact employed, it was, and continues to remain, amply justified." See, e.g., Steinberg v. Dep't of Justice, 1997 WL 349997, *1 (D.D.C. June 18, 1997); Beauman v. FBI, No. 92-cv-7603, slip op. at 2 (C.D. Cal. April 12, 1993). Plaintiff's proposal, at this time, is inefficient and unnecessary.

Second, Plaintiff's proposal is unworkable, as Glomar-like procedures, or any explanation on the public record, will not protect the interests of the government (and national security) that Section 552(c) was designed to protect. The "Glomarization" principle provides that an agency may properly respond to a FOIA

12

request by refusing to confirm or deny the existence of
responsive records where to do otherwise could in and of itself
cause harm cognizable under a particular FOIA exemption.  <u>See</u>
<u>Phillippi v. CIA</u>, 546 F.2d 1009 (D.C. Cir. 1976).  In refusing to
confirm or deny the existence of records, however, an agency must
explain which FOIA exemption "would itself preclude the
acknowledgment of such documents[.]"  <u>Pipko v. CIA</u>, 312 F. Supp.
2d 669, 680 (D.N.J. 2004).  In other words, a Glomar response "by
its nature operates necessarily on the basis of (and openly
connected with) specified FOIA exemptions[.]"  Attorney General
Memo at 26; <u>see also</u> <u>Pipko</u>, 312 F. Supp. 2d at 679 ("The CIA's
right to make a Glomar response in any given case depends upon
whether the affidavits provided by the Government support a
denial of the plaintiff's FOIA request *under the proffered FOIA*
*exemptions*.") (emphasis added).[4]  Because of this, even a Glomar-

---

[4] An examination of cases in both the Third Circuit and
other circuits reveals that courts analyze Glomar responses in
the context of specific FOIA Exemptions.  <u>See, e.g.</u>, <u>Wolf v. CIA</u>,
473 F.3d 370, 375 (D.C. Cir. 2007) (as cited by Plaintiff at Pl.
Memo at 36 n.19 ) ("The question, then, is whether the existence
of Agency records regarding an individual foreign national
constitutes information itself protected *by either FOIA Exemption*
*1 or Exemption 3*.") (emphasis added); <u>Cozen O'Connor v. U.S.</u>
<u>Dep't of Treasury</u>, 570 F. Supp. 2d 749, 786 (E.D. Pa. 2008) ("In
its Glomar response, the agency must cite the exemptions it
asserts and provide sufficient information for the court to
determine whether the Glomar response is justifiable."); <u>Wilner</u>
<u>v. Nat'l Sec. Agency</u>, 2008 WL 2567765, *3 (S.D.N.Y. June 25,
2008) ("The Glomar Response does not stand alone; rather,
defendants must tether it to one of the nine FOIA exemptions, and
explain why the requested documents fall within the exemption
identified."), <u>aff'd</u> 592 F.3d 60 (2d Cir. 2009).

like response to a question about 552(c)'s exclusion provisions can compromise the secret, sensitive information the exclusions are intended to protect.

To illustrate:  if a criminal, publicly known to be under investigation by the FBI, requests all records on himself that involve wire tapping, the FBI could respond that it can neither confirm nor deny the existence of such records, because to do so may interfere with a pending investigation, see Exemption 7(A). A Glomar response in this instance would adequately protect the sensitive information at hand: whether the FBI is, in fact, employing wire taps as part of its investigation into the requester.  If, however, that same requester does not know whether an investigation has been initiated against him and submits the same request for all records on himself that involve wire tapping, the identical Glomar response - that the FBI could neither confirm nor deny the existence of such records because to do so may interfere with a pending investigation - would alert the requester of the existence of the investigation, information the FBI may need to protect if it believes its disclosure could reasonably be expected to interfere with the investigation.

It is this very conundrum that lead Congress to amend the FOIA to include Section 552(c)'s exclusion provisions.  Congress recognized that there are times when any "response to a FOIA request amounts to an acknowledgment by the FBI that a file exists on a specific subject and alerts hostile intelligence

14

services that an investigation is underway or has taken place."
132 Cong. Rec. 26763, *27142 (1986).  Thus, Congress provided
that documents that fall under Section 552(c) categories may be
treated "as not subject to the requirements of [FOIA]" - a phrase
unique to Section 552(c).  As Senator Hatch explained, "while the
effect of [the exclusion] will be somewhat analogous to the
situation in which an agency neither confirms nor denies the
existence of responsive records - colloquially known as
Glomarization - *their operation, both administratively and in
court, will be different*."  132 Cong. Rec. 31424 (1986) (emphasis
added).

Here, Plaintiff asks Defendants to point to the FOIA request
and argue why Defendants interpret some portions (or all) of the
request as seeking records, that if they exist, would be
excludable under one of the three exclusion provisions and
therefore are not processing those portions (or all) of the
request.  Plaintiff would then "brief to this Court its argument
that the types of records sought, if they exist, would not fall
within the exclusion."  Pl. Memo at 37.  But the exclusion
provisions do not turn on interpretations of FOIA requests;
instead, they turn on external facts, such as whether there is a
criminal investigation underway and whether there is reason to
believe that the subject of the investigation is unaware of its
pendency and could interfere with the investigation if he or she

15

knew of its existence.  See 5 U.S.C. § 552(c)(1)(A)-(B).
Consequently, one must ask:  under Plaintiff's proposed
procedures, what could the parties say in their briefs?  If
Defendants were relying on an exclusion to shield information in
this case, such as Exclusion (c)(1), Plaintiff's proposed Glomar-
like procedures would require Defendants to identify that
exclusion, possibly tipping their hand to the existence of an
open yet secret criminal investigation, 5 U.S.C. § 552(c)(1).  In
support of Defendants' argument that documents, if they exist,
should be shielded pursuant to Exclusion (c)(1), however,
Defendants could do nothing more than parrot the language of the
exclusion provision, leaving Plaintiff little to respond to in an
opposing brief.  If, on the other hand, Defendants were not
actually relying on an exclusion in this case, Defendants would
nonetheless have to state that there could possibly be
information that can be withheld pursuant to Exclusion (c)(1),
for to do otherwise would allow requesters to determine, by
process of elimination, when records have actually been excluded.
Again, in support of Defendants' hypothetical invocation of
Exclusion (c)(1), Defendants would describe hypothetical
documents that fall precisely under the contours of Exclusion
(c)(1), to which Plaintiff would have no viable response.

      Clearly, proceeding in this manner does not provide the
"meaningful judicial review" Plaintiff seeks.  See Pl. Memo at
37.  Although Plaintiff laments the one-sided nature of the *in*

16

*camera, ex parte* submission by Defendants, the procedures as they exist now place before the Court *the facts* of whether Defendants have relied on 552(c) and, if so, which documents they are shielding, thereby allowing the Court to more honestly adjudicate Plaintiff's 552(c) claim.  Neither the Court nor the parties need expend time litigating hypotheticals, as Plaintiff admits its proposed procedures require the Court and parties to do.  See Pl. Memo at 38 n.21 (suggesting the parties should brief the propriety of any "such hypothetical invocation").  Thus, for all of these reasons, Plaintiff's newly proposed procedures should be rejected.

Finally, this Court should also deny Plaintiff's request for the Court to issue a sealed opinion setting forth the Court's reasoning upholding or rejecting Defendants' invocation of Section 552(c).  Such a practice of issuing sealed opinions on 552(c) claims is not tenable, as total secrecy is needed in order to ensure the exclusions actually fulfill their purpose.  If, for example, the FBI excluded records pursuant to 552(c)(3) because the records pertain to foreign intelligence and their existence is classified, a discussion of those records and the validity of the 552(c)(3) invocation would reveal the existence of the records to counsel for Plaintiff, who do not have the necessary clearance to be privy to such classified information.  Likewise, if a plaintiff requests records on himself, and he is, in fact,

17

the subject of an investigation of which he is not aware, any
sealed decision in which a court would provide its reasoning
would disclose to the requester the existence of that
investigation, thereby nullifying the purpose of 552(c)(1).
Moreover, it is no answer to say that a sealed opinion could be
shared only with plaintiff's counsel, and not the requester, for
a requester may be appearing *pro se*, and if he is not, providing
this secret information to his attorney and asking the attorney
not to share it with the client strains the attorney-client
relationship.  For these reasons, similar requests for a sealed
opinion have been rejected by other courts, and this Court should
do the same here.  See Islamic Shura Council of Southern Cal. v.
FBI, 635 F.3d 1160, 1167-69 (9th Cir. 2011) (recognizing that
"[i]n camera proceedings are [] sufficient to comply with both
due process and the purposes of the FOIA" and that a Court's
decision on the government's in camera, ex parte 552(c)
submission should be withheld from the public, from the
plaintiffs, and from plaintiffs' counsel, "in order to avoid an
intolerable conflict of interest"); cf. Arieff v. U.S. Dep't of
Navy, 712 F.2d 1462, 1470 (D.C. Cir. 1983) (recognizing that
allowing opposing counsel but not the opposing party to see
protected information in a FOIA case "strains the attorney-client
relationship" and puts "the attorney in the position of knowing,
and being unable to disclose to his principal, the very data he
has been retained to acquire"); Steinberg v. Dep't of Justice,

18

1997 WL 349997, *1 (denying a Motion that sought additional clarification on the Court's decision under 552(c)).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' March 16, 2012, Motion for Summary Judgment as to Defendants' February 22, 2012, Supplemental Release; deny Plaintiff's April 2, 2012, Cross-Motion for Partial Summary Judgment as to Defendants' February 22, 2012, Supplemental Release; and deny Plaintiff's request for new procedures for adjudication of its Section 552(c) claim.


DATED: April 13, 2012          Respectfully submitted,

                               STUART F. DELERY
                               Acting Assistant Attorney General

                               PAUL J. FISHMAN
                               United States Attorney

                               JOHN TYLER
                               Assistant Director
                               Federal Programs Branch

                               */s/ Deanna L. Durrett*
                               DEANNA L. DURRETT (NY BAR)
                               U.S. Dept. of Justice,
                               Civil Division
                               Federal Programs Branch
                               26 Federal Plaza
                               New York, NY 10278
                               (212) 264-9232 phone
                               (212) 264-1916 fax
                               Deanna.L.Durrett@usdoj.gov

                               *Attorneys for Defendants*