## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

_____

**AMERICAN CIVIL LIBERTIES**　　　　　:
**UNION OF NEW JERSEY,**　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　**Plaintiff,**　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:　　　**Civil Action 11-2553 (ES)**
　　　　**v.**　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:　　　**OPINION**
**DEPARTMENT OF JUSTICE, et al.**　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　**Defendants.**　　　　　　　:
_____:

**SALAS, DISTRICT JUDGE**

Pending before this Court are (1) Defendants the Department of Justice ("DOJ") and the Federal Bureau of Investigation's ("FBI") (collectively the "Defendants") motion for summary judgment (Docket Entry No. 20); (2) Plaintiff American Civil Liberties Union of New Jersey's ("Plaintiff" or "ACLU") cross-motion for partial summary judgment (Docket Entry No. 21); (3) Defendants' motion for summary judgment as to Defendants' February 22, 2012 supplemental release (Docket Entry No. 26); and (4) Plaintiff's cross-motion for partial summary judgment as to Defendants' February 22, 2012 release (Docket Entry No. 27).   This Court has jurisdiction pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 28 U.S.C. § 1331.   The Court has considered the submissions made in support of and in opposition to the instant motions and decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78.   Based on the reasons that follow, the Defendants' motions are GRANTED and ACLU's motions are DENIED.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff ACLU is a regional affiliate of the American Civil Liberties Union, which is a national non-profit organization.   (Docket Entry No. 1, Compl. ¶ 7).   Plaintiff is established

under the laws of the State of New Jersey and has its headquarters in Newark, New Jersey. (*Id.*).  The DOJ is a Department of the Executive Branch of the United States government headquartered in Washington, D.C., and is an agency within the meaning of 5 U.S.C. § 552(f)(1).  (*Id.* at ¶¶ 8, 9).

On July 27, 2010, the ACLU submitted a request (the "Request") under the Freedom of Information Act ("FOIA") to FBI headquarters, the FBI's Newark field office and five resident FBI agencies in New Jersey. (Docket Entry No. 20, Defendants' Statement of Material Facts ("DSOM") ¶ 1).  The ACLU requested documents related to the FBI's "use of race and ethnicity to conduct assessments and investigations in local communities in New Jersey."  (*Id.*). The Request seeks records concerning the FBI's collection, mapping and use of New Jersey communities' racial or ethnic information.  It also seeks the maps themselves.  (Docket Entry 20-2, Declaration of David M. Hardy ("Hardy Decl.") Ex. A).  The FBI responded to the request by first performing a search of its Central Records System.  (DSOM ¶ 3).

For this search, the FBI used search terms such as "racial and ethnic community demographics," "racial and ethnic behaviors," "racial and ethnic characteristics," "behaviors," and "cultural traditions."  (Hardy Decl. ¶ 19).  The search did not yield any responsive documents because the ACS database is not indexed in a manner conducive to these types of search terms.  (*Id.*).  Therefore, the FBI issued Electronic Communications ("ECs") in two phases: first to the Director's Office, the Directorate of Intelligence ("DI"), and the Office of the General Counsel ("OGC"), and second to the Newark field office and New Jersey's five resident agencies.  (Docket Entry No. 22-1, Supplemental Declaration of David M. Hardy ("Hardy Supp. Decl.") ¶¶ 5, 17).  The ECs requested that FBI personnel search "database systems as well as paper manual files" for "legal memoranda, procedures, policies, directives,

practices, guidance, or guidelines created since December 16, 2007" pertaining to racial and ethnic data collected by the FBI.  (*Id.* ¶¶ 11-12).  The ECs issued in phase two also requested information related to ethnic or racial communities and their connections or likely connections to criminal or terrorist groups, and maps created based on ethnic or racial data collected.  (*Id.* ¶¶ 17-18).  The search yielded 782 pages of records potentially responsive to the ACLU's request.  (DSOM ¶ 4).

On December 22, 2010, the FBI released 298 pages of training materials concerning the FBI's Domestic Intelligence Operations Guide ("DIOG") authorities to the ACLU, some of which were redacted pursuant to exemptions 2, 6, 7C and 7E established by 5 U.S.C. § 552(b).  (DSOM ¶ 6, Hardy Dec. ¶ 8, Exhibit D).  On February 16, 2011, the ACLU appealed the FBI's withholding or redaction of documents responsive to the initial FOIA request.  (DSOM ¶ 7).  On May 4, 2011, the ACLU filed the instant action, challenging the FBI's response to its FOIA request and seeking an injunction to require the Defendants to process the Request.  (Compl.).  On June 20, 2011, the FBI released fourteen additional pages, partially redacted, pursuant to exemptions established by 5 U.S.C. § 552(b).  (DSOM ¶ 10).  Of the total 782 potentially responsive pages, "312 were released in full or in part, 283 were withheld in full pursuant to 5 U.S.C. § 552(b), and 187 were withheld in full as duplicates."  (DSOM ¶ 11; Docket Entry No. 20-1, Memorandum in Support of Defendants' Motion for Summary Judgment ("DSJ") 5).  Finally, on February 22, 2012, Defendants released six additional pages of an electronic communication (the "Feb. EC").   (Docket Entry No. 26-4, Defendants' Statement of Material Facts dated March 16, 2012 ("DSOM 2") ¶ 1).

The parties agreed that discovery was not appropriate and that the case should proceed to summary judgment. (*See* Docket Entry Nos. 18, 19). The Court considers the parties' arguments in turn.

## II. LEGAL ANALYSIS

### A. Legal Standard

A court shall grant summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. *See Celotex*, 477 U.S. at 324. The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

FOIA requires government agencies to make their records available to the public upon request. 5 U.S.C. § 552. Unless the requested record falls under a FOIA exemption, agencies are required to produce it. 5 U.S.C. § 552(b). "The agency bears the burden of justifying the withholding, and the [district] court reviews the agency claims of exemption *de novo*." *OSHA Data/CIH Inc. v. United States Dep't of Labor*, 220 F.3d 153, 160 (3d Cir. 2000) (quotations & citations omitted). An agency can meet its burden by filing an affidavit describing the material

withheld and explaining why that material falls under a particular exemption.  *McDonnell v. United States*, 4 F.3d 1227, 1241 (3d Cir. 1993).  This affidavit is afforded a presumption of good faith, "which cannot be rebutted by purely speculative claims about the existence of other documents."  *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotations & citations omitted). A court will grant summary judgment in favor of the agency only when the agency's affidavits "describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption . . . , and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Davin v. United States Dep't of Justice*, 60 F.3d 1043, 1050 (3d Cir. 1995) (citations and quotations omitted).  Importantly, the affidavits must detail why the material withheld meets the claims exemption.  *Id.*

The DOJ seeks summary judgment and the ACLU cross-moves for partial summary judgment.  In support of its motion, the DOJ argues that (1) the FBI is not a proper party to this action; (2) the DOJ conducted an adequate search that was reasonably calculated to uncover all responsive documents; and (3) the DOJ properly withheld records pursuant to FOIA exceptions. In support of its cross-motion for partial summary judgment, the ACLU argues that (1) the FBI is a proper party to this action; (2) the DOJ failed to present detailed affidavits to allow Plaintiff to challenge the adequacy of the search; (3) the DOJ did not conduct an adequate search for responsive records; and (4) the DOJ improperly withheld or segregated responsive records in full.  Defendants have submitted three declarations and a *Vaughn* index in support of the motions.  The Court will address each argument below.

### B.     The FBI

The DOJ contends that the FBI is not a proper party to this litigation because FOIA applies to agencies, and the FBI is merely one component of an agency - the DOJ.  (DSJ at 7). The ACLU responds that the FBI is an agency for FOIA purposes and should be held accountable for its actions pertaining to ACLU's FOIA request.  (Docket Entry No. 21-1, Plaintiff's Cross-Motion for Partial Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment ("PSJ") at 11, 13).  Where the DOJ is already a named defendant in a FOIA case, dismissing the FBI has no legal effect.  *See Vazquez v. United States Dep't of Justice*, 764 F. Supp. 2d 117, 119 (D.D.C. 2011) (finding that the Court need not "dwell on the issue" of whether the FBI is a proper party to a FOIA action when the DOJ is also a named party to that action).  Therefore, the Court finds that the FBI may be dismissed from the instant action.

### C.     Adequacy of the Search

"Under the FOIA, an agency has a duty to conduct a reasonable search for responsive records." *Abdelfattah v. United States Dep't of Homeland Sec.*, 488 F.3d 178, 182 (3d Cir. 2007) (internal citations omitted).  To demonstrate the adequacy of a search pursuant to a FOIA request, the agency should provide "a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Id.* (quoting *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)).  The fact that other documents possibly responsive to the request exist but were not uncovered by an agency's search is immaterial to the adequacy of that search.  *Id.* (quoting *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

The DOJ argues that the Hardy Declaration demonstrates that the DOJ conducted an adequate search reasonably calculated to uncover all responsive documents.  (DSJ at 9-11).  The

6

DOJ also points to the Supplemental Declaration of David M. Hardy and contends that the additional information it provides more than satisfies the adequacy requirement for an agency search pursuant to FOIA.  (Docket Entry No. 22, Defendants' Reply in Support of Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Partial Summary Judgment ("Def. Reply Br.") at 3-8).  The ACLU argues that the DOJ failed (1) to provide sufficiently detailed affidavits describing the search and (2) to conduct an adequate search in response to the ACLU's FOIA request.  (PSJ at 13-14).

The ACLU alleges that the Hardy Declaration inadequately describes the search because it does not explain how the FBI determined which offices to search.  (*Id.* at 15).  However, the Supplemental Declaration of David M. Hardy does provide such an explanation.  The first phase of the FBI's search was directed to the Office of Congressional Affairs ("OCA"), the Office of Public Affairs ("OPA"), and the Corporate Policy Office ("CPO") within the Director's Office, the DI, and to the OGC.  (Hardy Supp. Decl. ¶ 5).  The FBI selected the OCA and the OPA because those offices liaise with the public and Congress about FBI activities, and would be a logical place to search for policy and guidance documents such as those requested by the ACLU.  (*Id.* ¶ 6-7).  The FBI selected the CPO because that office manages FBI policy and procedure, and would also be a logical location to search for the policy and guidance documents sought by the ACLU.  (*Id.* ¶ 8).  The FBI selected the DI because that office produces its own intelligence regarding racial and ethnic data, and would have access to that and any related documents.  (*Id.* ¶ 9).  Finally, the FBI selected the OGC because it provides internal training and policy education, and would be a logical place to search for policy-related materials such as those requested by the ACLU.  (*Id.* ¶ 10).  The second phase of the FBI's search was directed towards the Newark field office and the five resident New Jersey agencies.  These locations were selected for the search

7

because the ACLU requested "records pertaining to the FBI's use of race and ethnicity to conduct assessments and investigations in . . . New Jersey" from the New Jersey FBI field office. (Hardy Decl., Ex. A at 1; *see also* Hardy Supp. Decl. ¶ 19).  Therefore, any concerns the ACLU may have had about the FBI's explanation of which offices to search are rendered moot by DOJ's submission of the Supplemental Declaration of David M. Hardy.

The ACLU alleges that the FBI's search is inadequate because the Hardy Declaration fails to explain the type of search conducted.   (PSJ at 15).   However, the Supplemental Declaration provides this information in reasonably sufficient detail.  In phase one and two of the search, the FBI requested that personnel search "all retrievable agency records regarding this request.  This includes a review of database systems as well as paper or manual files."  (Hardy Supp. Decl. ¶ 11).   Agency records included "[a]ll records or communications preserved in electronic or written form . . . [e]lectronic records maintained on computers, or audio or video tapes . . . [e]mails . . . [a]ny other portable media . . . [and] [a]ny other stand alone databases created for the purpose of particular investigation(s)."  (*Id. ¶* 14).  In phase two of the search, the FBI requested that Newark field office personnel search for and produce records created after December 16, 2008, describing the types of racial, ethnic, behavioral, and cultural information or maps collected or maintained by the field office, and how many communities the field office collected information on or created maps of.   (Hardy Supp. Decl. ¶ 17-18).   Further, the Supplemental Declaration states that the Newark field office confirmed that it had "'conducted a diligent search of intelligence products and maps that meet the guidelines provided' . . . [and that] its search had been 'reasonable calculated to located [sic] all relevant agency records.'"  (*Id.* ¶ 20).  Finally, the Supplemental Declaration provides the requisite averment, that "the FBI searched those locations within the FBI that it determined would be most likely to house

responsive information."  (*Id.* ¶ 21).   Therefore, the Court finds that ACLU's allegation that the FBI did not properly describe the type of search conducted is unfounded.

Finally, the ACLU's takes issue with the adequacy of the FBI's search because the Hardy Declaration does not indicate whether the DOJ searched the "redacted Domain Management repository or the GEOINT[1] records system," and that the DOJ failed to release electronic communications that "were likely" created or received by the FBI's Newark field office.  (PSJ at 17-18).   First, the Supplemental Declaration of David M. Hardy explicitly states that the FBI searched both the Domain Management repository and all GEOINT records.  (Hardy Supp. Decl. ¶ 9, 19).   Therefore, this concern has been adequately addressed.   Second, "[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Berger v. I.R.S.*, 487 F. Supp. 2d 482, 493 (D.N.J. 2007) (quoting *SafeCard Servs.*, 926 F.2d at 1200).   Importantly, the Court need only consider whether the search was adequate, not whether certain documents exist. *Abdelfattah,* 488 F.3d at 182.   Therefore, the ACLU's allegations that the DOJ failed to identify "electronic communications that were *likely* created by the FBI's Newark Field Office," (PSJ at 18, emphasis added), do not render the FBI's search inadequate.

For the foregoing reasons, the Court finds that the DOJ submitted an affidavit that sufficiently describes an adequate search designed to uncover all reasonably responsive documents.   Therefore, the Court will deny Plaintiff's request for partial summary judgment and grant Defendants' request finding Defendants adequately described and performed the search.

---

[1] According to Defendants, GEOINT, or Geospacial Intelligence, is a "reference to an intelligence discipline, not a database."  (Hardy Supp. Decl. ¶ 9).   GEOINT is the "exploitation and analysis of imagery and geospacial information to describe, assess, and visually depict physical features and geographically-referenced activities on the earth."  (*Id.*).   There is not a specific "GEOINT" record system, but Defendants directed the manager of the GEOINT program, the Directorate of Intelligence, to search for responsive records.  (*Id.*).

### D.       § 552(c) - In Camera Declaration

The ACLU claims that Defendants may be withholding information pursuant to § 552(c) of FOIA, and requests that Defendant submit an *in camera* declaration regarding those withholdings for the Court's review.  (PSJ at 19-20).  Section 552(c) allows the government to exclude certain highly sensitive information from a FOIA request.  An "exclusion" is different from an exemption in that the government does not need to acknowledge the existence of the excluded information.  *Steinberg v. United States Dep't of Justice*, No. 93-2409, 1997 WL 349997 (D.D.C. June 18, 1997).  Instead, the government may file an *in camera* declaration explaining that either an exclusion under 552(c) was correctly invoked, or that no exclusion was invoked at all.  *Id.*

Here, Defendant has submitted such an *in camera* declaration to the Court in response to ACLU's request, on February 9, 2012.  Based on that declaration, without confirming or denying the existence of any exclusion, the Court finds and concludes that if an exclusion was invoked, it was and remains amply justified.

### E.       Withholding and Segregation of Records

Plaintiff disputes the application of FOIA exemptions to six categories of records exempted or redacted by Defendant.  (PSJ at 23-24, 34-35).  Defendant relies upon FOIA exemptions in 5 U.S.C. § 552(b)(1), (6), (7)(A), (7)(C), (7)(D) and (7)(E). Plaintiff also argues that the DOJ failed to demonstrate that it disclosed reasonably segregated information.

#### 1.  Exemption 552(b)(1)

Exemption (b)(1) allows an agency to withhold records that are classified pursuant to an Executive order.  The FBI withheld Domain Intelligence Notes ("DINs") # 1-8, the Newark 2009 Annual Baseline Domain Assessment ("2009 BDA"), the October 30, 2009 Electronic

Communication ("October 2009 EC") and the NK GEOMAP 450, pursuant to FOIA exemption (b)(1).  (Hardy Decl., Exhibit J).  The DOJ contends that these documents contain "information that relates to intelligence activities, sources, and methods or foreign relations or foreign activities of the United States[.]"  (DSJ at 15)  As such, the DOJ argues that Executive Order 13,526 permits exemption of these items from the ACLU's FOIA request.  (*Id.* at 15).  The ACLU contends that the DOJ failed to explain "both why the material has been kept secret and why such secrecy is allowed by the terms of [the] executive order."  (PSJ at 29, 32).

FOIA Exemption 1 is commonly referred to as the National Security Exemption. *Houghton v. N.S.A.*, 378 F. App'x 235, 237 (3d Cir. 2010).  It exempts from disclosure matters that are kept secret pursuant to an Executive Order in the interest of national defense or foreign policy.  *McDonnell v. United States*, 4 F.3d 1227, 1242 (3d Cir. 1993).  In order for a document to be withheld under Exemption 1, it must be properly classified pursuant to the applicable Executive Order.  *Id.*  In order to invoke Exemption One, an agency must furnish a detailed affidavit explaining why the material was withheld and why the withholding is permissible under an existing Executive Order.  *Houghton*, 378 F. App'x at 237.  Courts must afford "substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record."  *Id.* (citations & quotations omitted).  An agency is entitled to summary judgment if its affidavits (1) "describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exception," and (2) "are not controverted by either contrary evidence in the record or evidence of agency bad faith."  *McDonnell*, 4 F.3d at 1243 (internal quotations and citations omitted).

The DOJ has met its burden to justify its Exemption 1 withholdings by submitting the Hardy Declaration.  The DOJ invoked Exemption 1 based on Executive Order 13,526 § 1.4(d).  (Hardy Decl. ¶ 35).  This section permits information to be classified if it "could reasonably be expected to cause identifiable or describable damage to national security . . . and [if] it pertains to . . . foreign relations or foreign activities of the United States, including confidential sources."  Exec. Order No. 13,526 § 1.4.

### a.  DINS 1-8, 10-11

The Hardy Declaration describes the subject of DINS # 1, 3, 5 and 8 as "current ongoing/growing threat by an Extremist Group/Terrorist Organization within the Newark area of responsibility."  (Hardy Decl. ¶ 40, Exhibit J).   The Declaration describes DINs # 2, 4, 6 and 7 as pertaining to a "current/ongoing threat stemming from a foreign country's intelligence gathering efforts within the Newark Area of Responsibility."  (*Id.*).  The Declaration provides a thorough description of the information contained in each section of each DIN.  For example, the "Details" section of DINs # 1-8 provides "targets of concern, specific threats, further assessments and analysis of ongoing and upcoming threats, a review of current, ongoing and potential investigatory activities that may be related to threats."  (*Id.*).   The *Vaughn* index elaborates that these documents are utilized by agents to inform them of these threats and to counteract the activities detailed within them.  (Hardy Decl., Exhibit J).

Most importantly, Mr. Hardy avers in the Hardy Declaration that he "personally and independently examined the information withheld . . . pursuant to FOIA Exemption (b)(1)[,]" and that he "determined that the classified information . . . is exempt from disclosure pursuant to E.O. 13526, § 1.4, category (c) . . . ."  (*Id.* ¶ 31).  Affording substantial weight to Mr. Hardy's

averments in the Hardy Declaration, as this Court must, the Court finds that the agency properly withheld DINs # 1-8, pursuant to FOIA Exemption 1.

### b.  2009 BDA and EC

The Hardy Declaration also provides a thorough description of the 2009 BDA and the 2009 EC.  According to the Declaration, the 2009 BDA "provides a comprehensive analysis of Newark's area of operations, specifically threats and vulnerabilities both domestic and foreign, criminal and intelligence, [and] key concerns."  (Hardy Decl., p. 49).  The Declaration provides a detailed list of the contents of the 2009 BDA, including discussions of "priority threats, emerging threats, analyzed threats, key findings, domain vulnerabilities, [and] proposed next steps . . . ."  (*Id.*).  The Declaration describes the contents of the 2009 EC as "the basis for the October 30, 2009 Baseline Domain Assessment . . . .  [T]his information was utilized in a 2009 assessment . . . . [and] continues to be used in current assessments."  (Hardy Supp. Decl. ¶ 31).  A description of operations, including threats and vulnerabilities to Newark area operation logically falls into Exception One.  The Court is satisfied that an adequate factual basis existed for the DOJ to properly deny ACLU's FOIA request pursuant to Exemption One.

### c.  NK GEOMAP 450

Plaintiff contends that Defendants have failed to identify a provision of the Executive Order that supports classification and failed to describe the harm that would result from describing the map's contents.  (PSJ at 36).  Defendants reply that the map supports an ongoing classified investigation.  (Hardy Decl., ¶ 40, p. 50, Ex. J).   The Court finds that Defendants have not provided this Court with enough information to assess whether NK GEOMAP 450 would fall into Exemption 1.

Therefore, the Court will grant summary judgment for Defendant as to all documents except NK GEOMAP 450, and deny summary judgment for Plaintiff on the invocation of the 552(b)(1) exemption.[2]

## 2. Exemption 552(b)(6)

Under exemption (b)(6), an agency may withhold records such as personnel files for which disclosure would constitute an unwarranted invasion of personal privacy. The FBI withheld portions of an electronic communication (the "February 2009 EC") "documenting and authorizing the opening of an Assessment or DIN," (Docket Entry No. 26, Second Supplemental Declaration of David M. Hardy ("2d Supp. Decl.") ¶ 5), pursuant to FOIA Exemption 6. The DOJ contends that this withholding is necessary to "protect the names and identifying information of FBI Special Agents ("SAs") who were responsible for . . . the investigative activities discussed in the document." (*Id.* ¶ 12). The ACLU does not respond to this argument. (*See* Docket Entry No. 27, Reply Memorandum in Support of Plaintiff's Cross-Motion for Summary Judgment ("Reply PSJ")). Therefore, the Court grants summary judgment for Defendant and denies summary judgment for Plaintiff on the partial withholding of the February 2009 EC pursuant to FOIA Exemption 6.

## 3. Exemption 552(b)(7)(A)

Exemption (b)(7)(A) permits an agency to withhold records compiled for law enforcement purposes when production of those records would interfere with an ongoing proceeding. The FBI withheld in full DINs # 1-8, 10, and 11, the 2009 BDA, the October 2009 EC, and NK Geomaps 442-45 and 450 and redacted portions of the EC pursuant to FOIA Exemption 7(A). The DOJ argues that each of these documents is linked to an ongoing

---

[2] The Court notes that it will uphold Defendants invocation of Exemption 7 as it relates to NK GEOMAP 450 so summary judgment is still appropriate. *See* Section II.F.3 and 6.

investigation, and is thus exempt from disclosure.  The ACLU contends that the DOJ's declarations are conclusive, and fail to "identify specific ongoing or likely enforcement proceedings that would be adversely impacted by disclosure of the segregable, non-exempt portions of the document."  (PSJ at 33, 35).

In order to invoke Exemption 7(A), the FBI must show that "(1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable harm."  *Manna v. Dep't of Justice*, 51 F.3d 1158, 1164 (3d Cir. 1995).  "Although the Third Circuit has declined to establish bright-line criteria to determine the type of information that would fall under Exemption 7(A), documents that are thought to be included within the exemption's purview include those generated within the agency or otherwise not in the possession of known or potential defendants." *Estate of Fortunato v. I.R.S.*, Civ. No. 06-6011, 2007 WL 4838567, at *3 (D.N.J. Nov. 30, 2007) (quotations omitted).  Typically, Exemption 7(A) is invoked where release of the documents may result in witness intimidation, have a chilling effect on potential witnesses and other sources of information, or undermine a witness's confidentiality.  *Grasso v. IRS*, 785 F.2d 70, 76 (3d Cir. 1986).

The Court finds that Defendant has met its burden of demonstrating proper reliance on Exemption 7(A) with the Hardy Declaration and the two Supplemental Hardy Declarations.  The Hardy Declaration avers that all of DINs # 1-8, 10, and 11, the 2009 BDA and the October 2009 EC withheld contain information currently being used for ongoing and prospective investigations and concern a "current/ongoing threat."  (Hardy Decl. ¶ 40).  The Hardy Declaration then goes on to describe, in detail, each document withheld pursuant to this exception from pages 33 to 51. For example, DIN #1 relates to a "[c]urrent ongoing/growing threat by an Extremist Group/Terrorist Organization with the Newark area of responsibility."  (*Id.*, p. 33).  It also

discusses each part of the document and explains the information contained therein.  (*Id.* p. 33-34).  In another example, the Hardy Declaration explains that NK GEOMAPs 442-445 are maps of New Jersey created to address threats/issues related to Newark's area of responsibility.  (*Id.* p. 51).  The maps are used as a tool by special agents to pinpoint areas of concern, by analysts to establish areas of focus and by the field office to allocate resources.  (*Id.*).  The Hardy Declaration provides the same level of details for all of the withheld documents.   As to the redacted EC, Defendants attest that groups identified are subject to current, active investigations and the collected information is being use by intelligence analysts for ongoing investigations.  (2d Supp. Hardy Dec. ¶ 9).   Mr. Hardy describes the information redacted in full detail as well.  (*Id.*).

As such, the Court grants summary judgment in favor of Defendant.

### 4.  Exemption 552(b)(7)(C)

Exemption (b)(7)(C) allows an agency to withhold records compiled for law enforcement purposes when release of those records would constitute an unwarranted invasion of personal privacy.  The FBI withheld portions of the February 2009 EC pursuant to FOIA Exemption 7(C).  The DOJ contends that this withholding, like the withholding under Exemption 6, is necessary to "protect the names and identifying information of FBI Special Agents ("SAs") who were responsible for . . . the investigative activities discussed in the document."  (*Id.* ¶ 12).  The ACLU does not respond to this argument.  (*See* Reply PSJ).  Therefore, the Court grants summary judgment for Defendant and denies summary judgment for Plaintiff on the partial redaction of the February 2009 EC pursuant to FOIA Exemption 7(C).

### 5.  Exemption 552(b)(7)(D)

Pursuant to exemption (b)(7)(D), an agency may withhold records that "could reasonably be expected to disclose the identity of a confidential source or information furnished by that confidential source."  The FBI withheld portions of DIN # 9 pursuant to FOIA Exemption 7(D).  The DOJ contends that this withholding applies because "confidential informants or sources," (Hardy Decl. ¶ 53) have been given an "implied assurance of confidentiality."  (DSJ at 31).  The ACLU does not respond to this argument.  (*See* Reply PSJ).  Therefore, the Court grants summary judgment for Defendant and denies summary judgment for Plaintiff on the partial redaction of the DIN # 9 pursuant to FOIA Exemption 7(D).

### 6.  Exemption 552(b)(7)(E)

Finally, exemption (b)(7)(E) permits an agency to withhold records which would disclose "techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law."  Pursuant to Exemption 7(E), the FBI withheld in full DINs # 1-8, 10, 11, the 2009 BDA, the October 2009 EC, NK Geomap 442-45 and 450, and withheld in part the DIOG materials, DIN # 9 and the February 2009 EC.  (DSJ at 34).  With respect to the materials withheld in full, which the DOJ characterizes as "investigative, intelligence-gathering technique[s]," the DOJ argues that "[p]ublic disclosure would allow the threats to take advantage of identified vulnerabilities and adjust their behavior to avoid detection."  (*Id.*).  The DOJ groups the pages withheld in part into six categories, each of which the DOJ contends would be detrimental to the FBI's intelligence gathering efforts if disclosed: (1) "[s]urveillance, [m]onitoring and [m]apping [i]nformation/t[]ools"; (2) "[u]naddressed [w]ork"; (3) "[c]ollection and/or [a]nalysis of [i]nformation"; (4) "[s]pecific [s]cenarios in [w]hich [p]articular [a]ctivities or [t]echniques are

17

[a]uthorized"; (5) "[a]pproval [l]imitations & [t]echnical or [p]ractical [l]imitations on [p]articular [i]nvestigative [t]echniques"; and (6) "[i]dentification and [c]ontents of [f]ile [n]umbers, [i]dentifying [s]ymbols, [f]orm and [d]atabases, [t]erms, and [d]efinitions." (*Id.* at 34-38). Plaintiff does not dispute the application of Exemption 7(E) to DINs #1-11, the 2009 BDA, the October 2009 EC, or the NK Geomaps 442-45 and 450. Therefore, the Court grants summary judgment for Defendant and denies summary judgment for Plaintiff on the withholding of those documents pursuant to FOIA Exemption 7(E).

Plaintiff does, however, dispute the application of Exemption 7(E) to the DIOG materials withheld in part and the February 2009 EC, arguing that defendants "fail to sufficiently describe their basis for these withholdings." (PSJ at 37). With respect to the DIOG materials, Plaintiff "seeks summary judgment on . . . the name of the repository where all information about Domain Management must be documented[3] . . . and information redacted from the Investigative Methods/Approval tables." (*Id.*). With respect to the February 2009 EC, Plaintiff seeks summary judgment on the "racial and ethnic information, census data and population statistics." (Reply PSJ at 27).

FOIA Exemption 7(E) applies to law enforcement records which, if disclosed, would risk circumvention of the law. *Davin*, 60 F.3d at 1064. "An agency seeking to invoke Exemption 7 does not have to identify a particular individual or incident as the object of an investigation into a potential violation of law or security risk." *Finkel v. United States Dep't of Labor*, Civil Action No. 05-5525, 2007 WL 1963163, at *10 (D.N.J. June 29, 2007) (internal quotations omitted). However, an agency must still demonstrate a connection between its law enforcement authority and the information contained in the withheld material. *Id.* A court evaluating a withholding based on Exemption 7 must balance "the privacy interests at risk against the public interest, if

---

[3] Defendant has released this information. (*See* Hardy Supp. Decl. Ex. A). Therefore, Plaintiff's argument is moot.

any, that would be served by disclosure." *Id.* (quoting *Manna v. United States Dep't of Justice*, 51 F.3d 1158, 1165-66 (3d Cir. 1995)).

In the Hardy Declaration, Defendant explains that the remaining categories of the DIOG materials contain investigative techniques and procedures, and the events triggering the FBI's use of such techniques and procedures.  (DSJ at 34-38).  While the public may know that some of these techniques and procedures exist, it does not know the manner in which the FBI uses them.  (*See, e.g.*, *id.* at 36).  The DOJ argues that disclosure of the remaining categories of DIOG materials would be "extremely detrimental to the FBI's efforts to gather intelligence necessary to prevent crime and terrorist activity." (*Id.* at 35).  DOJ also contends that disclosing the withheld DIOG materials would risk circumvention of events triggering use of those techniques. (*Id.* at 36).  Plaintiff introduces no evidence to suggest that Defendant submitted these statements in bad faith.  Absent evidence from Plaintiff to rebut the presumption of good faith afforded to the FBI's declaration, the Court finds that the FBI properly withheld the DIOG materials pursuant to Exemption 7(E).

Defendant explains that the information redacted from the February 2009 EC was withheld because it would reveal "operational direction and guidance on what criteria to look for in determining what constitutes a specific type of domestic terrorism group and evaluating that group." (2d Supp. Decl. ¶ 16).  The Second Supplemental Declaration explains that release of the redacted information would risk circumvention of the law because targets of investigations could alter their behavior to avoid detection and to exploit gaps in FBI intelligence.   (*Id.*). Again, Plaintiff fails to introduce evidence to rebut the presumption of good faith afforded to the statements in this affidavit.  Therefore, the Court finds that the FBI properly withheld in part the February 2009 EC pursuant to Exemption 7(E).

For the foregoing reasons, the Court grants summary judgment for Defendant and denies summary judgment for Plaintiff on the withholdings pursuant to Exemption 7(E).

### 7.  5 U.S.C. § 552(b): Segregability

Plaintiff argues that Defendant failed to show that it disclosed reasonably segregable portions of material that would otherwise be exempt from disclosure with respect to DINs # 1-8, 10 and 11, the 2009 BDA, the October 2009 EC, and NK Geomaps 442-45 and 450.  (PSJ at 23-24).  Specifically, Plaintiff alleges that the Hardy Declaration fails to address what portion of each withheld document contains non-exempt, segregable information and why it cannot be segregated and disclosed.  (PSJ at 25).  The FBI avers that it "has processed and released all reasonably segregable information from the records responsive to plaintiff's request to the FBI." (Hardy Decl. ¶ 66).

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  The agency bears the burden of proving that the withheld portions are not segregable from the non-exempt material.  *Davin*, 60 F.3d at 1052.  The agency does not meet its burden by providing merely conclusory statements regarding the segregability of withheld documents.  *Id.*  Instead, a detailed factual recitation showing why certain materials are not reasonably segregable is required.  *Id.*

Here, the FBI provides detailed explanations of the varying types of information withheld from each document in question, and explains why that particular type of information would not be subject to disclosure, or is not reasonably segregable from otherwise exempt information. (*See, e.g.*, Hardy Decl. ¶¶ 54-63).   Mr. Hardy attests that "[e]ach page of every document was carefully reviewed, line by line, to determine if any information could be segregated for release."

(*Id.* ¶ 66).  After this review, the FBI determined that DINs # 1-8, 10 and 11, the 2009 BDA, the October 2009 EC, and NK Geomaps 442-45 and 450 "concern investigatory focuses of which the mere acknowledgment of intelligence gathering and investigative activity would cause serious damage to the National Security" and harm to ongoing and anticipated future investigations.  (*Id.*).  Defendants then explain that the public information in these documents is "intermingled" with non-public information which could "tip off adversaries as to the focus of Newark's attention and resources."  (Hardy Supp. Decl.  ¶¶ 31, 33).  In fact, Defendants go through all of the documents Plaintiff contends are segregable and explains why each one is not.  (Def. Reply at 19 to 28).  For example, DINs # 1-8, 10 and 11 contain information about current threats to national security.  (Hardy Decl., p. 33-48).  Similarly, the 2009 BDA, the October 2009 EC, and NK Geomaps 442-45 and 450 also contain highly sensitive information that is intertwined with the public information Plaintiff seeks to be segregated.  (*Id.*).  Based on the detailed factual recitations in the two Hardy Declarations and Defendants' briefs, the Court finds that Defendants have met their burden to demonstrate why the materials at issue are not segregable and will grant summary judgment in favor of Defendants.

## III.    CONCLUSION

The Court GRANTS Defendant's motions for summary judgment, and DENIES Plaintiff's motions for partial summary judgment.  An appropriate order shall accompany this opinion.

*/s/ Esther Salas*

Dated: October 1, 2012                                              **Esther Salas, U.S.D.J**